FILED US District Court-UT
NOV 02 '22 AM 11:38

TRINA A. HIGGINS, United States Attorney (#7349)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15049)
BEN WILLOUGHBY, Special Assistant United States Attorney (#10716)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

**SEALED**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WADE C. LEMON<br>KASEY A. YARDLEY<br><br>Defendants. | **INDICTMENT**<br><br>Count 1: 18 U.S.C. § 371, 2 (Lemon and Yardley)<br><br>Counts 2-3: 16 U.S.C. § 3372 (a)(1) and (a)(2), 18 U.S.C. § 2 (Lemon)<br><br>Case: 4:22-cr-00122<br>Assigned To : Nuffer, David<br>Assign. Date : 11/01/2022 |

The Grand Jury charges:

## BACKGROUND

At all times relevant to this Indictment:

1.  Defendant WADE COX LEMON (hereinafter "LEMON") was a resident of Holden, Utah and was a licensed big game outfitter and offered services in Utah.

-1-

2.  Defendant KASEY ALAN YARDLEY (hereinafter "YARDLEY") worked for defendant LEMON as a cougar hunting guide and houndsman.

3.  Defendant LEMON is the registered agent for LEMON HUNTING L.L.C. ("LHL").

4.  Some of Defendants' hunting clients resides outside of the state of Utah.

5.  Unindicted coconspirators including Co-conspirator 1, worked for defendant LEMON as houndsmen on various hunts. Co-conspirator 1 worked as a houndsman on a December 15, 2020 cougar hunt with defendant LEMON.

6.  LEMON sold guiding services for cougar hunts at prices typically between $5,000 and $7,000 per hunt that YARDLEY would often lead as houndsmen.

7.  LEMON's houndsmen received gratuity for their services often the gratuity would be hundreds of dollars.

8.  On January 26, 2021 LEMON's houndsmen received a gratuity from LEMON's client.

9.  Cougars occupy wild areas of Utah and are commonly the target of hunters, including clients of defendant LEMON. Cougars are hunted by driving in remote areas until a cougar track is observed in the snow, often where the cougar crossed a road, at which point specially trained dogs are let loose to follow the track. The outfitter and client follow the dogs until the cougar is either lost or brought to bay in a tree or cliff area. The cougar is then shot by the client-hunter, sometimes skinned in the field, and the trophy parts (or whole carcass) are transported out of the field. In Utah the trophy parts of the cougar must be brought to a state game agency office, where biological

information and kill site information are provided by the client and outfitter on forms supplied by the game agency. Utah Division of Wildlife Resources Administrative Rule (UTDWR Rule) 657-10-15. The trophy parts of the cougar are then usually transported by the client or outfitter to a taxidermist for mounting or shipment back to the client's home state.

10. Utah strictly regulates the means by which cougars may be lawfully taken, that is, captured, killed, or collected. In Utah, for example, state law prohibits the practice of "canned" hunts. UTDWR R657-10-9(3). Canned hunts are defined as "when a cougar is treed, cornered, held at bay or its ability to escape is otherwise restricted to allow a person who was not a member of the initial hunting party to arrive and take the cougar." UDWR Rule 657-10-2(2)(a). Furthermore, Utah law requires that when dogs are used in the pursuit of a cougar, the hunter intending to take the cougar must be present when the dogs are released and must continuously participate in the hunt thereafter until the hunt is completed. UTDWR Rule 657-10-12(3).

11. On February 20, 2019, LEMON signed a U.S. Forest Service Special Use Permit For Outfitting And Guiding, form FS-2700-4i, for LHL valid on the Fishlake National Forest for ten years. Section F of the Special Use Permit labeled "Compliance With Laws, Regulations, And Other Legal Requirements" states, "In exercising the rights and privileges granted by this permit, the holder shall comply with all present and future federal laws and regulations and all present and future state, county, and municipal laws, regulations, and other legal requirements that apply to the permit area, to the extent they do not conflict with federal law, regulation, or policy."

12.     Under 36 C.F.R. §261.10(l), it is unlawful for any permittee to violate any term or condition of a special use authorization.

13.     On December 8, 2020, LEMON's Bureau of Land Management ("BLM") Special Recreation Permit allowing him to guide on BLM land expired and was not renewed.

### Relevant Wildlife Statutes and Regulations

### *The Lacey Act*

14.     The Lacey Act Amendments of 1981, 16 U.S.C. § 3371 *et seq.* (hereinafter "the Lacey Act"), makes it unlawful for any person knowingly to, among other things, transport or sell in interstate commerce any wildlife which the person knows to have been taken, possessed, transported, or sold in violation of any law or regulation of any State. 16 U.S.C. § 3372 (a)(2)(A).

15.     The Lacey Act defines the term "taken" to mean "captured, killed, or collected." 16 U.S.C. § 3371(j)(1).

16.     Under the Lacey Act, it is deemed to be a "sale of wildlife for any person, for money or other consideration, to provide guiding, outfitting, or other services, or a hunting permit, for the illegal taking, acquiring, receiving, transporting, or possessing of wildlife." 16 U.S.C. § 3372 (c)(1)(A).

### *Title 36 Code of Federal Regulations*

17. A Special Use Authorization is required in order to commercially hunt or guide on land under the Forest Service's authority. 36 C.F.R. § 251.50(a).

18. 36 C.F.R. § 261.10 (l) makes it unlawful for any permittee to violate any term or condition of a special use authorization. 36 C.F.R. § 261.10(d)(3) makes it unlawful to discharge a firearm into a cave.

19. A Special Recreation Permit is required in order to commercially hunt or guide on land under the Bureau of Land Management's (BLM's) authority. 43 C.F.R. § 2932.57 (a)(1)

20. 36 C.F.R. § 261.8(a) makes it unlawful to hunt in violation of state law.

### *Utah Law*

21. Utah law gives the Utah Division of Wildlife, in the form of the Utah Wildlife Board, the right to creates rules that regulate the seasons, locations and limits for hunts in the state. Utah Code Annotated § 23-14-18.

22. Utah regulations prohibit "canned" hunts. A canned cougar hunt is when a cougar is treed, cornered, held at bay or its ability to escape is otherwise restricted to allow a person who was not a member of the initial hunting party to arrive and take the cougar. UTDWR Rule 657-10-2(a). Furthermore, Utah law requires that "[w]hen dogs are used in the pursuit of a cougar, the licensed hunter intending to take the cougar must be present when the dogs are released and must continuously participate in the hunt thereafter until the hunt is completed." UTDWR Rule R657-10-12(3).

23. To legally take a cougar in Utah, a hunter must have a valid limited-entry cougar permit or cougar harvest objective permit per UTDWR Rule R657-10-3.

24. A person shall only export a cougar, or its parts, from the state of Utah if the person has a valid license, and the cougar has been properly tagged with a permanent possession tag per UTDWR Rule R657-10-17.

25. Utah regulations also prohibit hunters from hindering or restricting the escape of a cougar that has been pursued, chased, treed, cornered, or held at bay. UTDWR Rule R657-10-9(2).

26. Utah law makes it illegal to hold wildlife, including cougars, captive. Utah Code Annotated § 23-13-4.

27. Utah regulations prohibit acts in violation of Utah Code Annotated § 23-20-3(1), which includes unlawfully taking wildlife. A violation of this statute involving a cougar is a class A misdemeanor punishable by up to one year in jail. Utah Code Annotated § 23-20-4(3)(b).

## COUNT 1:
## CONSPIRACY TO VIOLATE THE LACEY ACT
## 18 U.S.C. § 371

28. All the factual allegations in this Indictment are hereby re-alleged and reincorporated as if fully set forth herein.

29. Beginning in or about November 2020 and continuing until at least March 2021, within the District of Utah, LEMON and YARDLEY, coconspirators herein, and aiding and abetting each other, did knowingly combine, conspire, confederate and agree together and with Co-conspirator 1 as well as other persons known and unknown to the

Grand Jury, to knowingly commit acts in violation of the laws of the United States, namely:

    a.    To knowingly sell and transport wildlife, namely cougars, with a market value greater than $350.00, in interstate commerce between Utah, Texas, Montana, and other states, by providing outfitting and guiding services in exchange for money or other consideration, knowing the wildlife was taken or attempted to be taken in violation of the laws of the United States and the state of Utah;

    b.    To conduct guiding services on BLM land on or about December 15, 2020, without a Special Recreation Permit in violation of 43 C.F.R. § 2932.57 (a)(1);

    c.    To conduct an illegal canned hunt on BLM land on or about December 15, 2020, whereby the cougar was held at bay and its ability to escape was otherwise restricted to allow the client who was not a member of the initial hunting party to arrive and attempt to take the cougar in violation of UTDWR Rule R657-10-9(3) and 36 C.F.R. § 261.8(a); and

    d.    To conduct an illegal canned hunt on National Forest Service land on or about January 24, 2021, whereby the cougar was held at bay & its ability to escape was otherwise restricted to allow the client who was not a member of the initial hunting party to arrive and take the cougar in violation of UTDWR Rule R657-10-9(3) and 36 C.F.R. § 261.8(a) (as it is unlawful to hunt in violation of state law).

### The Object of the Conspiracy

30.    It was the object of the conspiracy for defendants LEMON and YARDLEY to fraudulent obtain money from clients for big game hunts conducted in violation of the laws of the United States of America and the state of Utah.

## The Manner and Means of the Conspiracy

31. During the period of time relevant to the charges in this Indictment, LEMON and YARDLEY, defendants herein, along with Co-conspirator 1 and others known and unknown to the Grand Jury, did the following in order to achieve the objectives of the conspiracy:

    a. Defendant LEMON operated a big game outfitting and guiding business from his residence in Holden, Utah, through which he provided outfitting and guiding services for cougar hunts in Utah, to paying clients in Utah and from other states in exchange for fees ranging from several hundred dollars to several thousand dollars.

    b. Defendant YARDLEY worked for LEMON as a houndsman. Defendant YARDLEY located, tracked, and held cougars at bay until LEMON's clients could arrive and take (harvest) them.

    c. The cougar season in Utah typically runs from November through March. This time period generally coincides with the time period in which snow is on the ground. The snow helps the outfitters and guides find cougar tracks and helps the hunting hounds to better track the scent of a pursued cougar.

    d. YARDLEY and LEMON engaged in illegally guided canned hunts as defined by UTDWR Rule 657-10-2(2)(a).

    e. During the times relevant to this Indictment, LEMON maintained a Utah outfitter's license. LEMON did not possess a valid Special Recreation Permit ("SRP") to guide on BLM land after December 8, 2020. To date, LEMON has not renewed an SRP authorizing guiding services in Beaver County, Utah where the December 15, 2020 cougar attempted taking (harvest) was conducted.

    f. LEMON employed Co-conspirator 1 and others who along with YARDLEY worked as guides and houndsmen to facilitate the commercial hunting of cougars by LEMON's clients. LEMON charged between $5,000 and $7,000 for a guided cougar hunt. Employees tips from clients that range from hundreds to over a

thousand dollars. LEMON typically charged $5,000 to $7,000 for guided cougar hunts.

g. Defendant LEMON, Defendant YARDLEY, Co-conspirator 1 and others known and unknown to the Grand Jury, used hunting dogs to pursue cougars using separate independent teams when no client was in the field. Once a houndsman treed and cornered a cougar, the houndsman contacted LEMON who would arrange to have a client brought to the location to take (harvest) the animal.

h. Defendant LEMON, defendant YARDLEY, another individual, Co-conspirator 1 and others known and unknown to the Grand Jury, guided LEMON's hunting clients in Utah on BLM land when LEMON did not possess a valid SRP.

## Overt Acts

32. In furtherance of the conspiracy, and in order to achieve its objectives, LEMON and YARDLEY, defendants herein, along with unindicted coconspirators and others known and unknown to the Grand Jury, committed, or caused to be committed, the following overt acts in the District of Utah:

   a. On or about the dates listed in the table below, LEMON and YARDLEY, along with unindicted coconspirators conducted a guided hunt service on BLM land without authorization through a BLM Special Recreation Permit. The hunt was also conducted in an illegal manner using an illegal canned practice:

| Overt Act | Date | Description |
|---|---|---|
| 1 | December 15, 2020 | Co-conspirator 1 took a LHL client who resides outside the State of Utah, in the State of Texas, to look for a cougar that the client intended to harvest. |

| | | |
|---|---|---|
| 2 | December 15, 2020 | YARDLEY and another houndsman took separate teams of hounds to look for a cougar and later joined up in pursuit of a cougar. They trapped the cougar in a cave prior to LEMON's client's arrival. |
| 3 | December 15, 2020 | YARDLEY coordinated with Co-conspirator 1 to re-release hounds after the cougar was bayed up to appear to the client that the hunt was not a canned hunt. |
| 4 | December 15, 2020 | LEMON operated hunt on BLM land without a BLM Special Recreation Permit to provide Outfitter/Guide & Hunting programs to the public under the Fillmore and Cedar City Field Offices. LEMON's Special Recreation Permit expired on 12/8/2020 and LEMON did not renew. |

  b. On or about the dates listed in the table below, LEMON and YARDLEY, along with unindicted coconspirators conducted a guided hunt on US Forest Service Land. The hunt was conducted in an illegal manner using an illegal canned practice and the resulting cougar was then shipped out of state for taxidermy.

| Overt Act | Date | Description |
|---|---|---|
| 5 | January 24, 2021 | A houndsman., acting as a confidential informant ("CI") released dogs without the presence of a hunter and contacted LEMON about getting a client to harvest a cougar he had been tracking. |
| 6 | January 24, 2021 | CI arranged for LEMON to bring the client to take and harvest a cougar he had already treed. |
| 7 | January 24, 2021 | LEMON instructed the houndsman to release dogs just "for effect" when he and the hunter arrived at the location of the treed cougar |
| 8 | January 24, 2021 | LEMON arrived with the client, who harvested the cougar. |
| 9 | On a date unknown but between | LEMON shipped from Utah to Montana the pelt of the cougar harvested on January 24, 2021. |

| | January 24-29, 2021 | |
|---|---|---|
| 10 | Between February 9-13, 2021 | A taxidermist shipped the pelt of the cougar harvested on January 24, 2021 from Libby, Montana back to Utah. |

All in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2.

## COUNT 2-3
## THE LACEY ACT
## SALE OF UNLAWFULLY TAKEN BIG GAME
[16 U.S.C. § 3372(a)(1)(A), 16 U.S.C. § 3372(a)(2)(A), and 3373(d)(1)(B), and 18 U.S.C. §2.]

33. All the factual allegations in this Indictment are hereby re-alleged and reincorporated as if fully set forth herein.

34. On or about the dates listed in the table below, in the District of Utah, the defendants

WADE LEMON

did knowingly engage in conduct that involved the sale and purchase of guiding services involving wildlife with a market value in excess of $350.00, that is, a cougar hunt, knowing that said wildlife was taken, possessed, and transported in violation of the laws and regulations of the United States of America, specifically 36 C.F.R. § 261.10(c) and (d)(3) (no special use authorization permit), 43 C.F.R. § 2932(a)(1) (failure to obtain a Special Recreation Permit), 36 C.F.R. § 261.8(a) (regulation requiring all federal and state laws to be followed when hunting) and the laws of the State of Utah in violation of Utah Code Annotated § 23-13-4 (unlawful captivity), UTDWR Rule 657-10-9(3) (prohibit canned hunt), and UTDWR Rule 657-10-12(3) (hunter not present at dogs' release).

| COUNT | DATE (on or about) | NEXUS | CONDUCT |
|---|---|---|---|
| 2 | December 15, 2020 | Interstate sale of outfitting and guiding to Texas client | Interstate sale of outfitting and guiding services between Utah and Texas to a client who lives in Texas for the attempted taking of a mountain lion LEMON knew had been pursued and hindered prior to the presence of the hunter intending to take the cougar in Utah. LEMON did not have a valid Special Recreation Permit to guide on BLM land. |
| 3 | January 24, 2021 | Shipping of cougar pelt across state lines | Sale of outfitting and guiding services to a client for the taking of a mountain lion that LEMON knew had been treed prior to the presence of the hunter intending to take the cougar |

All in violation of Title 16, United States Code, Section 3372(a)(1), Section 2272(a)(2), and Section 3373(d)(1)(A) and Title 18 United States Code, Section.

## NOTICE OF FORFEITURE

Pursuant to 16 U.S.C. § 3374(a)(1) and 28 U.S.C. § 2461(c), upon conviction of any offense charged in violation of 16 U.S.C. § 3372(a)(1), (a)(2) the defendant shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable the offense. The property to be forfeited includes, but is not limited to:

- Cougar greenpelt
- A money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

A TRUE BILL:

/s/

GRAND JURY FOREPERSON

TRINA A. HIGGINS,
United States Attorney

RUTH HACKFORD-PEER
Assistant United States Attorney